SAM S. BEENE v. PAUL WAPLES ET AL.

No. 2875. Decided June 24, 1916.

**1.—Primary Election—Statutory Construction.**

The Act of August, 1913, Laws, 33d Leg., 1st Called Session, p. 101 (Senatorial Primary Election Law) being on a cognate subject and obviously intended to supplement the primary election law of 1905 (Act of May, 1905, Laws, 29th Leg., 1st Called Session, p. 520) thereby completing one general scheme of legislation upon that particular subject, the two statutes should be read and construed together. (Pp. 148, 149.)

**2.—Same—Expenses of Senatorial Primary.**

Section 34 of the Senatorial Primary Election Law of 1913 (Laws, 33d Leg., 1st Called Session, p. 109) in enacting that officers of such election should be paid "as provided by law for holding elections in other cases," refers to the enactment in the Primary Election Law governing such payment, that is by assessment against the candidates by the county executive committee of the party (Laws, 29th Leg., 1st Called Session, p. 546, sec. 111). It does not refer to the general law providing for payment of expenses of elections, not primaries, which is to be made out of the county treasury (Rev. Stats., 1911, arts. 2295, 2296). (P. 149.)

### 3.—Same—Constitutional Law.

The Senatorial Primary Election Law is not unconstitutional as devoting public funds to the purposes of a political party (Waples v. Marrast, 108 Texas, 5, 184 S. W., 180; Const., art. 8, sec. 3) its provisions for payment of the expenses of such election, properly construed, not so providing.   (Pp. 149, 150.)

### 4.—Jurisdiction of Supreme Court.

Questions of law coming under neither of the subdivisions 1 to 5 of article 1521, Rev. Stats., as amended by the Act of 33d Leg., ch. 55 (Laws, 1913, p. 107), can not be brought before the Supreme Court by certified questions from the Court of Civil Appeals.  Its jurisdiction to correct an erroneous declaration of the "substantive law" under subdivision 6 of that article attaches only by writ of error.   (P. 150.)

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

*Baskin, Dodge, Baskin & Eastus,* for appellant.—The senatorial primary law appears to bear no relation to the general primaries, as relates to the election officers and the manner of their payment.   In section 7 it is provided: "When the law with reference to holding senatorial primaries is silent, the election officers, in securing supplies, in conducting the election and making returns, and in canvassing the votes, shall in every particular follow the methods provided by law covering primary elections or general elections held for the purpose of electing or nominating State, district, county and precinct officers."

It will be noted that the methods provided in that section relate to securing supplies, conducting the election, making returns and canvassing the votes, and make no reference to the payment of the officers for holding the primaries.   Hence it is apparent that section 7 of the senatorial Act does not confer authority to assess the candidates for the payment of election officers for holding the second senatorial primary. Section 3 of said senatorial Act provides: "Every law regulating or any manner governing elections or the holding of primaries in this State shall be held to apply to each and every election or nomination of a candidate for a United States Senator so long as they are not in conflict with the Constitution of the United States regulating the election of United States Senators *or the provisions of this Act.*"

No other law relating to the holding of primaries referred to in said section will apply to the matter of paying the election officers for holding the second primary, because it is provided in section 34 they shall be paid as provided by law for holding elections in other cases, i. e., out of the public funds.

Section 34 of the senatorial Act, consistent with its other provisions, requires (as above noted) that election officers shall be paid as provided by law for holding elections in other cases, and thus attempts to require payment.   That this section of the Act in so far as it requires or authorizes payment of the election officers out of the public funds for the purpose of conducting a second senatorial primary for party purposes is unconstitutional and void, as being in violation of section 3

of article 8, of the Constitutiin, which declares: "Taxes shall be levied and collected by general laws and for public purposes only," was in effect held in the recent case of Waples v. Marrast, 184 S. W., 180.

Appellant further says that said senatorial primary Act and the articles thereof copied in his petition are void:

(a)    Because contrary to section 3, article 1, of the Constitution, which declares that: "All free men when they form a social compact have equal rights, and no man or set of men are entitled to exclusive, special emoluments or privileges but in consideration of public services."

(b)    Because in violation of section 19, article 1, of said Constitution, which declares: "No citizen of this State shall be deprived of . . . privileges or immunities, or in any manner disfranchised except by due course of the law of the land."

The proposed action of the defendant committees is further unlawful and void on the ground that such collection of money from local candidates for nominations before the July primaries and its expenditure is, by the terms of the senatorial Act, made unlawful and penal both as to the committees making and disbursing the collection, and the candidates making the payment, as a reading of the sections of the Act set out in appellant's petition will fully disclose.

The action of said committees is further unlawful and void because by the terms of the senatorial Act no authority exists for calling a second senatorial primary until after the primary to be held July 22, 1916, and it is ascertained as provided by said Act no senatorial candidate has received a majority of the vote polled in the first primary. The action of the defendant committees, and particularly the county committee in threatening to make the assessment against plaintiff before the July primary is held, is, therefore, premature, even if such assessment might at any time be lawfully made, which it is not believed can be done.

*Capps, Cantey, Hanger & Short* and *David B. Trammell,* for appellees. —Statutes in pari materia should be considered as if incorporated into one act, and construed with reference to each other.    Conley v. Daughters of the Republic, 106 Texas, 80, 156 S. W., 197, 157 S. W., 937; Houston National Exchange Bank v. School District No. 25, 185 S. W., 589.

As the Legislature could not lawfully provide for the payment of primary election officers out of public funds, this court must presume that such a result was not intended.    State v. Catlin, 84 Texas, 48, 53; Allen v. Texas & P. Ry. Co., 100 Texas, 530, 531.

Where two constructions are permissible, that upholding the validity of an Act will be adopted.    Madden v. Hardy, 92 Texas, 613, 50 S. W., 926; Allen v. Texas & P. Ry. Co., 100 Texas, 530, 101 S. W., 792; State v. Galveston, H. & S. A. Ry. Co., 100 Texas, 153, 97 S. W., 71; Albertype Co. v. Gust Feist Co.. 102 Texas, 219, 114 S. W., 791; Imperial Irrigation Co. v. Jayne, 104 Texas, 395, 138 S. W., 575.

A construction which would lead to an absurdity in the operation of the statute will be avoided, if possible. Fenet v. McCuiston, 105 Texas, 299, 147 S. W., 867; Jacobson v. Massachusetts, 197 U. S., 11, 49 L. Ed., 643, 655; United States v. Kirby, 7 Wall., 482, 19 L. Ed., 278; Lau Ow Bew v. United States, 144 U. S., 47, 36 L. Ed., 340, 344.

Undoubtedly the Legislature has plenary power to regulate the holding of primary elections for the selection of a nominee for United States Senator. Waples v. Marrast, 108 Texas, 5, 184 S. W., 180; Riter v. Douglas, 32 Nev., 400, 109 Pac., 444.

The Legislature could properly require the payment of the expenses of all primaries deemed necessary by assessments against the several candidates thereat. Montgomery v. Chelf, 118 Ky., 766, 82 S. W., 388; Kenneweg v. Allegheny County Commissioners, 102 Md., 119, 62 Atl., 249; State v. Brodigan, 143 Pac. (Nev.), 238; Socialist Party v. Uhl, 155 Cal., 776, 103 Pac., 181; State v. Nichols, 50 Wash., 508, 97 Pac., 728; State v. Scott, 99 Minn., 145, 108 N. W., 828; Riter v. Douglas, 32 Nev., 400, 109 Pac., 444.

It was within the power of the Legislature to provide a fixed amount which might be assessed against candidates for United States Senator, and to require candidates for district, county and precinct officers to pay pro rata the remaining expenses of all primary elections deemed requisite to properly ascertain the will of the party, in view of the marked dissimilarity between the situation of the candidates, it further appearing that the fee assessed against appellant is not unreasonable. State v. Brodigan, 143 Pac. (Nev.), 238; State v. Scott, 99 Minn., 145, 108 N. W., 828; Socialist Party v. Uhl, 155 Cal., 776, 103 Pac., 181; Montgomery v. Chelf, 118 Ky., 766, 82 S. W., 388.

The right of the Legislatsure in enacting a law to make a reasonable classification with reference to any subject of legislation has often been upheld. Waples v. Marrast, 108 Texas, 5, 184 S. W., 180; Southwestern Tel. & Telep. Co. v. City of Dallas, 174 S. W., 636; Texas Company v. Stephens, 100 Texas, 628, 103 S. W., 481; Bruce v. City of Gainesville, 183 S. W., 41; Auto Transit Co. v. City of Fort Worth, 182 S. W., 685; St. John v. New York, 201 U. S., 633, 50 L. Ed., 896, 5 Ann. Cas., 909; Patsone v. Pennsylvania, 232 U. S., 138, 58 L. Ed., 539; Lindsley v. National Carbonic Gas Co., 220 U. S., 61, 55 L. Ed., 369; State v. Milwaukee E. R. T. Co., 144 Wis., 386, 129 N. W., 623; Lakeview v. Tate, 130 Ill., 247, 22 N. E., 791.

The right to be a candidate for an office is a political, and not a civil, or property right. Walls v. Brundidge, 109 Ark., 250, 160 S. W., 230; Ann. Cas. 1915c, 980, and authorities cited.

Even the right to vote is not an inherent or natural right, but a right conferred by the State or body politic. Savage v. Umphries, 118 S. W., 193; Solon v. State, 114 S. W., 349; Watts v. State, 135 S. W., 585; Walls v. Brundidge, 109 Ark., 250, 160 S. W., 230; Ann. Cas. 1915c, 980, and authorities cited.

Even if it should be held that there is no law authorizing the Tarrant

County executive committee to make a single assessment for the purpose of meeting the expenses of both primaries, such action upon the part of said committee is not prohibited, and is a reasonable party regulation adopted in the exercise of the authority of said committees as governing bodies of the Democratic party of the State of Texas, concerning its internal affairs, over which, when not in violation of express statutes, the courts of this State have no control; and the agreed fact that appellant's part of any excess of funds raised by such assessment will be refunded to him in case no second senatorial primary is held, obviates any question of an unreasonable, oppressive or arbitrary exercise of the power reposed by the said Democratic party in its said State and county executive committees. The right to be a candidate for or to be elected to an office is a political and not a civil or property right. Walls v. Brundidge, 109 Ark., 250, 160 S. W., 230; Ann. Cas. 1915c, 980, and cases cited. Injunction will not issue to control political procedure. City of Dallas v. Consolidated Street Ry. Co., 105 Texas, 337; Watson v. Cochran, 171 S. W., 1067; Lyle & Eiker v. Longan, 162 S. W., 1156; Walls v. Brundidge, 109 Ark., 250, 160 S. W., 230; Kump v. McDonald, 61 S. E., 908; Boggess v. Buxton, 69 S. E., 367; Morrow v. Wipf, 115 N. W., 1121; State v. Larson, 101 N. W., 315; in re Ganley, 154 N. Y. S., 773; in re Holle, 145 N. Y. S., 388; in re Fairchild, 151 N. Y., 359, 45 N. E., 943; 15 Cyc., 330.

MR. JUSTICE HAWKINS delivered the opinion of the court.

Appellant seeks to restrain, by injunction, the levy of an assessment to defray expenses of a second senatorial primary election under Acts of 1913, 1 S. S., chapter 39, page 101, known as the Senatorial Primary Statute.

. The issues of law are presented here upon a certificate from the Court of Civil Appeals for the Second Supreme Judicial District, which discloses the essential facts and the contentions of the parties, and states the questions, as follows:

"Appellant sued appellees in the District Court of Tarrant County, Texas, averring that appellees constituted, respectively, the chairman and members of the State Democratic executive committee, and the chairman and members of the Tarrant County Democratic executive committee; that appellant was a candidate for Democratic nomination for justice of the peace of precinct No. 1, place No. 1, of Tarrant County, Texas, at the ensuing July primaries; that the appellees composing the State Democratic executive committee had instructed the appellees who were members of the Tarrant County Democratic executive committee to assess against appellant and the other candidates for district, county and precinct offices at said July primaries, a sufficient amount to defray the expenses of said July primaries, and as well also the expense of a second senatorial primary in Tarrant County, to be held on August 26th as provided by chapter 39, page 101, General Laws of Texas, passed at the Special Session of the Thirty-third Legislature;

that no second primary had ever been held in Tarrant County, but that appellees composing the Tarrant County Democratic executive committee were intending to comply with the instructions of the State executive committee, and were threatening to assess appellant his pro rata part of the expense necessary to meet said second senatorial primary. Appellant further averred that said Senatorial Primary Act was unconstitutional for various reasons, particularly (a) that the same is contrary to article 1, section 3, of our State Constitution; (b) that said Act is in violation of article 1, section 19, of our State Constitution; and (c) that the same provides for the payment of the remuneration of the election officers out of the public funds in contravention of section 52 of article 3, and section 3 of article 8, of our State Constitution, section 34 of said Act being likewise attacked on the ground last mentioned. Appellant further averred that by virtue of the provisions of said Act he was prohibited under a penalty from contributing to the expense of said second senatorial primary, and that the State and county executive committees were also thereby prohibited from making any assessment against him for such purpose. That unless such contemplated assessment was paid by appellant the county executive committee would refuse to allow his name to be placed upon the ballot as a candidate for the office above mentioned. Appellant further averred that the action of the two committees in making an assessment for said second senatorial primary was premature, and therefore void, in that the time for calling said second senatorial primary had not arrived, and it was not known whether such primary would be necessary. Appellant's petition contained further allegations of fact substantially as contained in the agreed statement of facts hereinafter set forth, and he prayed for an injunction restraining the appellees, and each of them, from assessing or attempting to assess him any sum of money to be used directly or indirectly in defraying the expenses of said second senatorial primary, and also prayed for general relief.

"Appellees demurred generally to the sufficiency of appellant's petition, specially demurring on the ground that it appeared from the allegations thereof that the sole purpose for which suit was brought was to restrain appellees from performing certain acts as members of the State and county Democratic executive committees, without prayer for other relief, and answered substantially that they composed, respectively, the State and Tarrant County Democratic executive committees; that said Democratic party, and said appellees as officials thereof, was a collection or association of individuals organized solely for the purpose of furthering the principles of democracy in the State of Texas; that all acts complained of were done and performed by them as officials of said party, in the management, control and determination of the internal affairs, organization and procedure of said Democratic party, within the scope of their duties as prescribed by the members of the Democratic party of this State, and appellees specially pleaded a want

of jurisdiction in the District Court to grant appellant's prayer for relief and thus control the action of appellees in the respects complained of.

"Appellees further averred that they were informed and believe that said Senatorial Primary Act was valid and constitutional, and provided the only way by which nominees for the office of United States Senator might legally be selected; that said Act imperatively requires a second primary in the event no candidate for the nomination for such office receives a majority of the votes cast at the senatorial primary to be held July 22, 1916; that it was imperatively necessary for the good of the Democratic party to properly select a candidate for United States Senator to be elected at the next ensuing general election, and that the acts of all appellees herein were in an endeavor to discharge the duties imposed upon them as officials of said Democratic party, without any intent or purpose to oppress or in any way discriminate against any person whomsoever.

"It was further averred, and the agreed facts show, that there are eight candidates for the Democratic nomination for the office of United States Senator from this State, required to be filled at the next ensuing general election, in November of this year, and in the opinion of appellees, as officials of said party as aforesaid, no one of said candidates will secure a majority of the ballots cast for nominees for said office at the general primary election in July of this year, and that such belief was the basis for the course adopted by the appellees.

"Appellees further aver, and the agreed facts also show, that at a meeting of said State executive committee held at Hillsboro, April 7, 1916, a resolution was passed recommending that primary elections be held for the nomination of all officers, including United States Senators, on July 22, 1916, and that in event no candidate for United States Senator received a majority of the votes cast for all the candidates for such office, the chairman be directed to call a second senatorial primary, at which only the names of the two highest candidates for such office should be submitted; that the several county executive committees be directed to assess the district, county and precinct candidates, and collect from them the necessary funds to pay the expenses of both said primaries, etc., and a copy of such resolution, together with a letter asking the co-operation of the Tarrant County executive committee, was mailed by the secretary of the State executive committee to appellee W. D. Smith, chairman of the Tarrant County executive committee.

"The agreed facts further show that the Tarrant County Democratic executive committee does not intend to hold a second primary for the selection of nominees for such county, district and precinct places for which no candidate receives a majority vote at the general primary on July 22, 1916, but intends to comply with the resolution and request of said Democratic executive committee and assess all district, precinct and county candidates pro rata for the expense necessary to hold said second senatorial primary, also assessing candidates for State offices the

amount allowed by law; that the amount which would be assessed against candidates for the office for which appellant aspires, for the purpose of paying the expenses of the July primaries, would not be greater than $30; that an additional sum of $10 would be assessed against him as his pro rata part of the expenses for the second senatorial primary, but that said county Democratic executive committee would refund to appellant his pro rata part of the excess of the total amount realized from all the assessments, over and above the expenses of the general primary election, to be held on July 22, 1916, in the event for any reason, no second senatorial primary was held. It further appears from the agreed statement of facts that the emoluments of the office of justice of the peace, precinct No. 1, place No. 1, for the ensuing two years would probably amount to the sum of $3000 per year, and that appellant had six opponents in his race for nomination for said office.

"The case was submitted to the trial court upon an agreed statement of facts substantially as hereinabove set forth (and which by order of this court, accompanies this certificate as a part hereof), who finally refused any relief whatsoever to appellant, from which judgment this appeal was taken, appellant presenting in this court the questions hereinafter certified.

"In view of the gravity of the questions presented by this record, the importance of the issues involved, and of an early and final determination thereof, all parties have agreed and we deem it advisable to certify unto your honors for decision, the following questions, viz:

"(1)   Is section 34 of said Act above referred to (General Laws 1913, Special Session, chapter 39, page 101), unconstitutional?

"(2)   If the preceding question be answered in the affirmative, are the remaining provisions of said law affected by the invalidity of said section 34, or is said Senatorial Primary Act otherwise subject to the constitutional objections urged by appellant?

"(3)   If section 34 should be held invalid, is the contemplated action of the Tarrant County Democratic executive committee in assessing appellant for his pro rata part of the expense of holding such second senatorial primary, under the provisions of the Act above referred to, for any reason illegal?

"(4)   In view of the number of candidates for the Democratic nomination for the office of United States Senator, and the probability of the necessity for the second senatorial primary, can the contemplated assessment against the appellant, if otherwise valid, be made at this time, under the stipulation to refund the excess as contained in the agreed statement of facts herein, in event such primary be not held, or is such assessment premature?"

Section 34 of said Act of 1913 is as follows:

"Sec. 34.   At each and every primary held for the nomination of a candidate for United States Senator, the election shall be conducted by the duly appointed and constituted election officers of the several

polling places and voting precincts throughout the State who shall be paid as provided by law for holding elections in other cases."

Said provisions of our State Constitution are as follows:

"All freemen, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public service." Art. 1, sec. 3.

"No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by due course of the law in the land." Art. 1, sec. 19.

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever. . . ." Art. 3, sec. 52.

"Taxes shall be levied and collected by general laws and for public purposes only." Art. 8, sec. 3.

In the absence of constitutional or statutory restrictions upon their duties and powers, the duly existing authorities of a political party, such as State and county executive committees, in accordance with party usage, may make and enforce all reasonable regulations relating to nominations within such party, including reasonable assessments against any and all candidates for such nominations.

Our State Constitution seems silent upon that subject. The amount of the assessment involved is not alleged to be excessive, and it does not appear to be unreasonable. The complaint, and the certified questions, alike relate, solely, to the validity, operation and effect of said statute, and, especially, of said section 34.

Is that section of said statute unconstitutional? We think it is not.

Our State Legislature saw fit, in 1905, in the exercise of unquestionable powers, to regulate the making of party nominations for various State, district, county and precinct offices, and, incidentally, to declare how the expenses thereof shall be defrayed. Acts 1905, 1 S. S., chapter 11, p. 520; arts. 3084 et seq., R. S., 1911.

Likewise, in 1913, the Legislature undertook to regulate the making of party nominations for the office of United States Senator from Texas, and, incidentally, to prescribe how the expenses thereof shall be defrayed. Acts 1913, 1 S. S., chapter 39, p. 101; Vernon's Sayles' Statutes, arts. 3174a et seq.

Unlike said Act of 1905 relating to primary elections generally, said Act of 1913 does not set out, specifically, provisions for payment of primary election expenses contemplated by the Act, but does declare, in general terms, and by unmistakable reference to pre-existing laws, how such expenses are to be defrayed.

Because those two statutes deal with the one general subject of party primaries for the making of party nominations, and are, therefore, essentially cognate, and because, obviously, the latter was intended to sup-

plement the former, thereby completing one general scheme of legislation upon a particular subject, and because the latter statute presents strong and conclusive intrinsic evidence of a legislative purpose and intent that, in so far as their phraseology will permit, the two statutes are to be treated, construed, applied and enforced as one, we regard it as too plain for argument that, accordingly, said two statutes should be read and construed together. Certainly they are statutes in *pari materia,* and in their interpretation the settled rules of statutory construction which are applicable in such instances should prevail. Conley v. Daughters of the Republic, 106 Texas, 80, 156 S. W., 197, 157 S. W., 937.

If section 34 should be construed as meaning that the election officers referred to therein (by which are meant, we think, the primary election officers provided for in said Act of 1905), are to be paid, for their services, out of public funds, such provision for payment is, plainly, unconstitutional, as directing a misuse of public funds. Waples v. Marast, 108 Texas, 5, 184 S. W., 180, recently decided by this court.

But if section 34 is to be construed and held to mean that such election officers are to be paid out of funds provided by reasonable assessments against candidates for party nominations, in all respects as set forth in and provided by said Act of 1905 in its relation to the primary election officers referred to therein, there exists no conflict whatever between said section 34 and any other provision of that Constitution or of the Constitution of the United States, and in that event, section 34 will stand as a valid expression of legislative will and authority.

We here adopt, as sound, said latter construction of said section 34, and affirm its constitutionality.

It will be noted that the above quoted section 34 of the senatorial primary law does not provide that the expense of holding senatorial primary elections shall be paid out of public funds. Instead of containing any such declaration, it says that that expense shall be paid *"as provided by law for holding .elections in other cases."* As provided by what law? This means necessarily, we think, the general primary law. The section (section 34), and the Act of 1913, of which it is a part, do not deal with *general* elections. They deal with only *primary* elections for a particular purpose,—the nomination of candidates for United States Senator. There could be no reasonable warrant, therefore, for looking to the general election law as the law intended by the reference in said section 34 in its relation to the payment of expenses of senatorial primaries, since the general election law is not a law upon the same subject. As a matter of reason, if there be a general law upon the same general subject, that is the law to be looked to as, necessarily, the law which the Legislature, in framing section 34, intended shall govern the matter.

We have the general primary law with its distinct provision for the method of defraying the expenses of primary elections, and resort should, accordingly, be made to that law as the law on the subject intended by

the reference in section 34. The provision of the general primary law—the Act of 1905—is for the payment of such expenses, not out of public funds, but by assessment against State, district, county, and precinct candidates.

Our conclusion as to the true meaning of said Act of 1913, and particularly as to the legal effect of section 34 thereof, is strengthened and confirmed by the unambiguous provisions of a preceding section thereof, as follows:

"Sec. 3. Every law regulating or in any manner governing elections or the holding of primaries in this State shall be held to apply to each and every election or nomination of a candidate for a United States Senator so long as they are not in conflict with the Constitution of the United States or of any law or statute enacted by the Congress of the United States regulating the election of United States Senators or the provisions of this Act."

Undoubtedly that adoption by reference includes all applicable provisions of said Act of 1905 relating to payment of expenses of primary elections.

Therefore, we answer said first certified question negatively; from which it follows that further answers to the second and third questions are unnecessary.

Because the fourth certified question is one of "substantive law," merely, and is not embraced by any of the first five subdivisions of article 1521, Revised Statutes, 1911, as amended by Acts of 1913, chapter 55, page 107, it is not a proper question for certification, and, inasmuch as this cause is not before us upon an application for a writ of error under subdivision 6 of said amended article, this court is utterly destitute of present jurisdiction or authority over that issue of law; wherefore, we decline to answer said fourth question. Art. 1522, R. S. Upon appeal the duty of passing upon such questions rests, primarily, upon the Court of Civil Appeals. This precise point was expressly so decided by this court in First State Bank of Archer City v. Power, 106 Texas, 210, 163 S. W., 581.